[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the Judicial District of Danbury. Many of the facts that give rise to this action are not in dispute. The plaintiff, whose maiden name is Marilyn Poppe, and the defendant were married at Brewster, New York on December 27, 1972. The CT Page 14445 plaintiff has resided continuously in the State of Connecticut for at least twelve (12) months immediately prior to the date of the filing of the complaint. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There are two adult children issue of the marriage. The plaintiff does not have any minor children. The State of Connecticut has not contributed to the support of either of the parties. The court finds the following additional facts.
The plaintiff is fifty-two (52) years old and the defendant is fifty-four years old. The parties previously owned a home in Sherman, Connecticut. The monthly mortgage on that home had originally been approximately $3000, and was subsequently reduced to approximately $2500 monthly. A foreclosure action was commenced regarding the home with a return date of June 6, 1995. As of the date the foreclosure action commenced, there was an arrearage on the promissory note, secured by the mortgage deed on the home, in the amount of $8,439.21 plus interest, late charges, costs of collection and reasonable attorney's fees. The foreclosure action on the home was completed in late October of 1995.
There were numerous pendente lite orders entered in this case. On February 22, 1995, by order coded No. 109, the court ordered that a Dodge Intrepid automobile, presently in the possession of the plaintiff, was not to be sold until further order of the court or agreement of the parties. Further, by order dated March 10, 1995, coded No. 111, the defendant was ordered not to take the Dodge Intrepid, or use it in any way, pending the decision on other pending motions. The plaintiff was to have exclusive use and possession of the vehicle pending a decision on other pending motions. On October 7, 1995, the defendant executed an assignment of title to the motor vehicle on behalf of Mone International, Inc. to DFR Used Auto Cars, Inc. The vehicle in question has Connecticut title No. 020968125, vehicle identification No. 2B3ED56F4PH549503. The 1993 Dodge Intrepid four-door sedan was purchased new on December 29, 1995 by Mone International, Inc. The defendant wrongfully removed funds from trust accounts of the two adult children, and used those funds to purchase the vehicle and place the vehicle in the name of Mone International, Inc. The action by the defendant in transferring title to the motor vehicle was in direct violation of the pendente lite orders and was in willful contempt of court. On March 28, 1995, by order coded No. 114, an arrearage is found in the amount of $1250. The court finds that the present balance on CT Page 14446 that arrearage is $125. The court finds that that balance is in the nature of an alimony arrearage and is therefore nondischargeable in bankruptcy. The court also entered orders on March 28, 1995 that the defendant was to pay the medical insurance premiums for the plaintiff. The court finds that there is an arrearage on that order in the amount of $176, and that that balance is in the nature of an alimony arrearage and is therefore nondischargeable in bankruptcy. By order dated May 15, 1995, the defendant was ordered to provide an accounting of his March and April, 1995 income, and an accounting of income monthly thereafter. The defendant provided to the plaintiff three monthly income accountings and has willfully failed to provide any other ones. The May 15, 1995 order also required the defendant to deposit the April and May, 1995 mortgage payments into a trustee account with his attorney and to deposit mortgage payments in that account for each subsequent month so that those funds become part of the marital estate. Both counsel agree that those monthly payments were to total $2500 per month. The defendant paid a total of $5000 into the trustee account held by his attorney. The defendant's attorney is presently holding a total of $5000 in his trustee's account from payments made to him by the defendant. The arrearage on that order amounts to $17,500, which the defendant has willfully failed to pay. The court finds that balance is in the nature of alimony and is therefore nondischargeable in bankruptcy.
Although the defendant knew of the assigned trial dates, he elected not to appear at the time of trial.
The order of May 15, 1995 also required the defendant to pay counsel fees in the amount of $1000 within sixty (60) days of that date. The defendant has willfully failed to pay that attorney's fees. Further, by order dated June 26, 1995, the defendant was ordered to pay to the plaintiff's attorney an additional $700 within thirty (30) days. The defendant has failed to make that $700 payment. The failure to pay the $1000 and the $700 is in willful violation of the existing court orders.
The order of the court dated March 28, 1995, was for neither party to sell or otherwise dispose of certain items that were listed on exhibits one and two. The plaintiff disposed of most of the items listed on exhibit two, which constituted household furniture-type items by having a yard sale that was conducted on or about October 11 or October 12 of 1995. The plaintiff netted $3,715.25 from the sale of the furniture and is presently holding CT Page 14447 those funds. The court already has made a finding in a prior pendente lite hearing that the plaintiff proved inability to comply with that court order because she did not have the money to put the furniture in storage in view of the pending completion of the foreclosure action of the family home where the items were located.
The plaintiff was employed at Grolier, Inc. when the present dissolution action commenced in August, 1994, doing telecommunications work. Her gross income was approximately $600 monthly. She went out on medical sick leave on approximately June 24, 1994. The sick leave has since ended and she is now receiving disability payments of $924 monthly. That is presently her only source of income. On or about June 24, 1994, the plaintiff had an emotional breakdown. She is presently being treated by a psychiatrist for that breakdown. She sees the psychiatrist every other week at a cost of $82 per visit. The weekly cost is $150 of which 60 percent is covered by insurance. The plaintiff has to pay the uncovered balance of $60 per visit. She also had been receiving physical therapy two times weekly at a cost to her of $10 per session. She has terminated that physical therapy because there is no remaining insurance coverage for it. The plaintiff presently resides with her daughter, son-in-law and their three children in a small, three bedroom home. She has one and one-half rooms in the basement that includes a kitchen and bathroom. The plaintiff is presently not eligible for social security benefits because she is missing one quarter of employment. Her disability payments will terminate in late spring or early summer 1996. She was employed between 1986 and 1989 at Mone, Inc., but did not receive any money for her work. The plaintiff is presently unable to work.
The plaintiff has a joint savings account with her daughter with a balance of $1,580.59. All of the money in that account is her daughter's money. The plaintiff is presently paying rent to her daughter and son-in-law in the amount of $500 monthly. She also pays approximately $30 monthly toward the heat and cable TV for the home. The plaintiff also has a Discover card liability that is not shown on her financial affidavit dated December 8, 1995. Part of the VISA liability of $2700 was for charges incurred by her daughter. The defendant submitted a financial affidavit during the course of the trial dated December 7, 1995. That affidavit does not show any weekly income from employment but does show income from a mortgage in the amount of $206.93 weekly. It does not show as an asset the mortgage itself and the CT Page 14448 balance due on the mortgage. The court does not find credible that affidavit to the extent that it shows no weekly income in view of the fact that the defendant did not appear for trial and was not subject to cross-examination. The court is, therefore, using the joint 1994 Connecticut tax return for the purpose of setting the defendant's current gross annual income at $17,363.99. The court has taken judicial notice of the federal and state tax tables to determine the defendant's net weekly income for the purpose of financial orders. The parties jointly own property at Silver Spring Shores, Florida, consisting of a vacant lot with a fair market value of $5000 and no mortgage. The parties also own a time share in Newport, Rhode Island, with a fair market value of $7000. The plaintiff has a Christmas club checking account with a balance of $1000. The parties have a safe deposit box at the Milford Savings Bank in which all of the items referred to as plaintiff exhibit 2, in the order coded No. 114, are located. The defendant has a pension/annuity plan with IVOE Local 137 in which no evidence was presented as to its present value. The defendant is the mortgagee of a mortgage on property located in New York. No credible evidence was presented as to the balance that is due on that mortgage. No credible evidence was presented as to the value of the Mone, Inc., or as to the value of the equipment or other assets owned by that corporation. The defendant owns all the shares of stock in that corporation. No credible evidence was presented as to what items of equipment owned by the corporation had been sold during the calendar year 1995. No credible evidence has been presented by the defendant regarding his current weekly expenses, his current liabilities or his current assets.
The joint income tax returns for calendar year 1990 show the following sources of income: (a) income to the defendant from the IVOE Local 137 annuity with a gross distribution of $7,923.94; (b) taxable interest of $15,896; (c) it also shows dividend income of $192; (d) capital gain of $561 The joint income tax return for calendar year 1992 shows the following sources of income: (a) wages, $12,108 (these were wages of the plaintiff from Grolier, Inc.); (b) taxable interest income, $14,435; (c) dividend income, $204; (d) taxable refund, credits, $147; (e) capital gains, $2,671. The plaintiff had gross earnings in 1993 from Grolier, Inc. of $17,308 19 The 1994 joint Connecticut resident income tax return shows that the parties had a combined federal adjusted gross income for that year of $27,224. The plaintiff earned $9,773.85 from Grolier, Inc. plus $8616 from H.J. Wilson Co., Inc. for a combined total of $9,860.01. The balance of the adjusted gross CT Page 14449 income of $17,363.99 was earned by the defendant.
The parties received a refund on their federal income tax return of $491 The plaintiff cashed that refund check and is presently holding that money. That money is not shown on her current financial affidavit.
The court has considered the provisions of § 46b-82
regarding the issues of alimony, and has considered the provisions of § 46b-81(c) regarding the issues of property division, and has considered the provisions of § 46b-62
regarding the issue of attorney's fees. The court enters the following orders.
ORDERS
A. BY WAY OF DISSOLUTION
1. The marriage between the parties is dissolved and each party is declared to be single and unmarried. The plaintiff is restored her maiden name of Marilyn Poppe.
B. BY WAY OF ALIMONY
1. The defendant is ordered to pay alimony in the amount of $165 per week. Said alimony is to terminate upon the earliest of the following: (a) the death of either party; and (b) the remarriage of the plaintiff. Alimony may be modified in accordance with the provisions of § 46b-86(a). Further, the provisions of section 46b-86(b) are applicable.
2. The $125 arrearage, together with a $176 arrearage as established in this decision, are ordered to be paid by January 31, 1996.
3. The total of $22,500 that was ordered to be paid in to be held in escrow by the defendant's attorney is ordered divided two-thirds to the plaintiff and one-third to the defendant. That results in the plaintiff being awarded $15,000 of the $22,500. Counsel for the defendant is holding $5000 which the court orders that he turns over to the plaintiff by January 31, 1996. That then leaves an arrearage of $10,000. The court has previously found that the plaintiff is holding $3,715.25 from the proceeds of a furniture sale plus $491 from an IRS refund check, totalling $4,206.25. The court awards $2000 of that amount to the defendant CT Page 14450 with that $2000 to be credited to the $10,000 arrearage, thereby reducing the arrearage to $8000. The full amount from the proceeds of the sale and the IRS refund are to be retained by the plaintiff. The $8000 arrearage is to carry interest at the rate of 10 percent per annum and is to be paid at the rate of $400 per month, commencing February 1, 1996, and on the first day of each month thereafter.
4. The court awards one-half of the defendant's pension/annuity with IVOE Local 137 to the plaintiff by QUADRO. Any payments received by the defendant prior to the time the QUADRO is in effect are to be divided equally between the parties. The defendant is ordered to cooperate in executing all the necessary documents in order for the QUADRO to be effective.
C. BY WAY OF PROPERTY ORDERS
1. The defendant is ordered to quitclaim to the plaintiff all of his right, title and interest in the land at Silver Spring Shores, Florida, by January 31, 1996, free and clear of any liens. The plaintiff is ordered to sell the property, and the net proceeds of the sale are to be divided equally between the parties. Any amount due to the defendant is first to be applied to all arrearages found to be owed by him under this decision with the remaining balance, if any, turned over to him.
2. The defendant is ordered to transfer to the plaintiff all of his right, title and interest in the time share in Newport, Rhode Island, by January 31, 1996.
3. All of the items referred to in plaintiff's exhibit 2, in the order coded No. 114, that are located in the safe deposit box at the Milford Savings Bank, are awarded to the plaintiff.
4. The joint account that the plaintiff holds with her daughter, her Christmas club, as well as all other assets owned by the plaintiff, are awarded to the plaintiff.
5. The mortgage held by the defendant is awarded to the defendant.
6. The defendant is ordered to transfer to the plaintiff one-half of the shares of stock that he owns in Mone, Inc. That transfer is to be completed by January 31, 1996.
D. BY WAY OF ATTORNEY'S FEES CT Page 14451
1. No attorney's fees are awarded in favor of either party.
2. The $1700 arrearage in attorney's fees owed by the defendant are to be paid by him by January 31, 1996.
E. MISCELLANEOUS ORDERS
1. Each party is to provide the other party with a copy of their federal and/or state income tax returns within fifteen (15) days after such returns have been filed by registered mail, return receipt or certified mail, return receipt, commencing with the 1995 income tax returns. In addition, the defendant is to provide the plaintiff with a copy of all corporate tax returns of any corporations in which he owns at least 10 percent of the shares of stock within fifteen (15) days after such returns have been filed by registered mail, return receipt or certified mail, return receipt, commencing with the next corporate tax return that is filed and annually thereafter. These orders shall remain in effect as long as there is an outstanding alimony order.
2. Counsel for the plaintiff is to prepare the judgment file within thirty (30) days and forward it to counsel for the defendant for signature and filing.
Axelrod, J.